### In re BRANIFF AIRWAYS, INC. et al., Debtor.

### BRANIFF AIRWAYS, INC. et al., Plaintiff,

v.

### CIVIL AERONAUTICS BOARD et al., Defendant.

Bankruptcy No. 482–00369.
Adv. No. 482–0403.

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

May 12, 1983.

Daniel M. Lewis, Arnold & Porter, Washington, D.C., for plaintiff.

J. William Doolittle, Prather & Seeger, Gerald Goldman, Hughes, Hubbard & Reed, Allen L. Lear, Civ. Div., Dept. of Justice, Washington, D.C., Ronald S. Orr, Gibson, Dunn & Cruthcher, Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION

JOHN FLOWERS, Bankruptcy Judge.

Braniff brings this action to enjoin the Civil Aeronautics Board ("CAB") from revoking its certificates of authority to fly the international air routes from Dallas Fort Worth to London and from Dallas/Fort Worth, Houston and New Orleans to Venezuela. Prior to May 12, 1982, Braniff provided the exclusive service on these routes. When it ceased all operations on that date the CAB, on an emergency basis, granted temporary authority to American Airlines to operate the London route and to Continental Airlines the Venezuela route. Braniff's certificates were left intact by this action. Those two carriers have continued to provide service on their respective routes and have intervened as defendants in this proceeding.

Notwithstanding domestic deregulation, certificates of authority are still required for international routes because the air space rights of foreign countries are involved and the right to fly such routes is governed by treaties. The selection of a carrier to fly an international air route is a three step process. First, the CAB awards a certificate of authority to the carrier it deems best able to perform the service. In the second step the President reviews the CAB's decision which becomes effective upon his approval. Once a certificate is granted it cannot be revoked by unilateral action of the CAB, rather an adjudicatory procedure is required. Finally, the State Department, at the request of the CAB, informs the foreign country which carrier is designated to fly the particular route.

Braniff's certificate for the London route was due to expire by its own terms in January, 1983, and the one for the Venezuela route in March, 1983. The CAB, consistent with its normal practice, commenced hearings on July 9, 1982, to determine whether the two certificates should be renewed upon their expiration or awarded to another carrier. In September, 1982, the Tax Equity and Fiscal Responsibility Act of 1982 became law. Section 531 of that Act provided that certain certificates issued by the CAB would remain effective for an additional two years beyond their normal expiration date. Braniff's two certificates in question here were included in the Congressional extension. At this point, shortly before the scheduled hearing date, the CAB added a new issue to its original agenda and proceeded to determine whether Braniff's certificates should be revoked. In due course, the CAB ordered that Braniff's certificate to fly the route from Dallas/Fort Worth to London be revoked. The effect of that decision was stayed for a period of 90 days during which Braniff requested this court to enjoin the CAB from implementing its order. Subsequently, the CAB also decided to revoke the Venezuela certificate. In a second part to its ruling the CAB granted new certificates authorizing American Airlines to operate the London route and Continental the Venezuela route.

During trial Braniff raised an issue as to whether action by the CAB in granting certificates to fly international routes is separate from its function of recommending the designee to the State Department. This issue arises from the fact that in the case of certain other international air routes numerous airlines hold certificates to fly them although the right is actually utilized by only a few of the certificate holders. Braniff argues that the injunction against revocation would be meaningless if the CAB can avoid its effect by granting additional certificates to American and Continental and recommending they be the designee. For reasons that will become apparent it is not necessary to address that issue.

Braniff contends that the injunction should be granted under the authority of § 105 of the Bankruptcy Code, 11 U.S.C. § 105, and also to prevent a violation of the automatic stay, 11 U.S.C. § 362. Section 105 provides that "[t]he bankruptcy court may issue any order" necessary to carry out the purposes of the Bankruptcy Code. Braniff bases its contention upon an argument that the certificates are property of the estate under § 541 of the Code and as such it is necessary that the court grant an injunction to protect that property otherwise the action of the CAB will eliminate its existence. Section 362(a)(4) of the automatic stay prohibits any entity, including the CAB, from taking any action to recover property from the estate. It should be noted that § 362 does not prohibit the CAB from conducting hearings because of the exception contained in § 362(b)(6). However that exception does not give the CAB authority to take property from the estate.

The most recent case dealing with the issue here is *Pension Benefit Guaranty Corporation, et al v. Braniff Airways, Incorporated, et al,* 700 F.2d 935 (5 Cir.1983). In that case the Court considered an order requiring the Federal Aviation Administration ("FAA") to make available to Braniff certain "landing slots". Slots were a creation of the FAA in an effort to cope with the nation's sharply reduced air traffic control capacity brought on by the strike of the Professional Air Traffic Controllers Organization in the summer of 1981. The court reversed the order requiring the FAA to deliver the slots on two grounds. First, the court concluded the slots were not property of the estate and therefore were not "within the jurisdiction of the Bankruptcy Court under § 105 of the Code". The Court gives no explanation for requiring property as a prerequisite for jurisdiction. Neither § 105 nor the general jurisdiction statute, 28 U.S.C. § 1471, mention property as a basis for jurisdiction. Indeed, one of the prime motives behind the enactment of the Bankruptcy Code in 1978 was the elimination of the difficulties arising from the concept of jurisdiction in the Bankruptcy Court based upon property in its possession. That is not

to say that the issue of property was unimportant to the decision. Braniff's argument in that case was essentially the same as it is here, that the slots and certificates are property of the estate and it is necessary for the Court to exercise its jurisdiction in order to protect that property.

 Braniff seeks to distinguish the Circuit's ruling by arguing that the slots there were of a different nature than the certificates here. Braniff points out that the slots were subject to being withdrawn or the entire slot program phased out by the unilateral action of the FAA. Here they argue that the certificates have a more permanent characteristic and thus should be considered to be property. It is not necessary that I deal with this alleged distinction because the matter is effectively foreclosed by the second part of the Circuit's decision wherein the court went on to hold that even if it assumed that the slots gave rise to some limited proprietary interest they were still subject to the continuing exclusive jurisdiction and approval of the FAA. This holding clearly indicates that rights under certificates or slots, which fall within the § 541 definition of property of the estate and which are subject to an administrative agency, remain subject to the exclusive jurisdiction of that agency and the Bankruptcy Court may not interfere in the agency's exercise of its administrative functions even though the effect of the agency's action may be to adversely affect that property of the estate.[1] The Court's opinion makes no mention of the ephemeral character of the slots as a basis for its decision and I do not believe the distinction urged by Braniff can be implied from it. In this case Braniff still has available the right to appeal the CAB's decision to the Circuit Court for the District of Columbia.

Based upon the foregoing I conclude that whether the certificates are property or not they remain subject to the exclusive jurisdiction of the CAB and the appellate process established by Congress with which the Bankruptcy Court may not interfere. Ac-

cordingly, the relief requested by Braniff will be denied.

---

1. The Court did not discuss the impact of § 362 nor mention *N.L.R.B. v. Evans Plumbing* 639 F.2d 291, (5th Cir., 1981) in which it left that precise question open for future decision.